**RECORD NO. 15-2169**

In The
# United States Court of Appeals
For The Third Circuit

## UNITED STATES ex rel. CUSTOMS FRAUD INVESTIGATIONS, LLC,

*Appellant,*

**v.**

## VICTAULIC COMPANY,

*Appellee.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## BRIEF OF APPELLEE

**Thomas C. Hill**
**Jeetander T. Dulani**
**Stephen S. Asay**
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
**1200 Seventeenth Street NW**
**Washington, DC 20036**
**(202) 663-8000**

*Counsel for Appellee*

**Brian R. Tipton**
**FLORIO, PERRUCCI, STEINHARDT & FADER**
**235 Broubalow Way**
**Phillipsburg, New Jersey 08865**
**(908) 454-8300**

*Counsel for Appellee*

THE LEX GROUP[DC] ♦ 1825 K Street, N.W. ♦ Suite 103 ♦ Washington, D.C. 20006
(202) 955-0001 ♦ (800) 856-4419 ♦ Fax: (202) 955-0022 ♦ www.thelexgroup.com

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Third Circuit LAR 26.1, Victaulic Company makes the following corporate disclosure statement:

Victaulic Company is a private corporation organized under the laws of New Jersey. Victaulic Company does not have a parent corporation, and no publicly held corporation owns 10% or more of Victaulic Company's stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF CONTENTS ........................................................................... ii

TABLE OF AUTHORITIES.........................................................................v

STATEMENT OF THE ISSUES ..................................................................1

STATEMENT OF RELATED CASES ........................................................2

STATEMENT OF THE CASE.....................................................................3

SUMMARY OF THE ARGUMENT ...........................................................8

STANDARD OF REVIEW .......................................................................14

ARGUMENT ............................................................................................15

I. THE DISTRICT COURT PROPERLY DISMISSED CFI'S LIMITED AND CONCLUSORY COMPLAINT..............................15

A. Dismissal of the Complaint Was Proper Because It Failed to State a Claim Under Rule 8(a)............................................17

1. The Complaint Failed to Allege Facts Supporting a Claim That Victaulic Failed to Mark Imported Pipe Fittings ..................................................17

2. The Complaint Failed to Allege Facts Supporting a Claim That Victaulic Had the Requisite Scienter ..........19

B. Dismissal With Prejudice Was Proper Because the First Amendment of the Complaint Failed to State a Claim Under Rule 8(a)...............................................................21

II. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY DENYING CFI'S MOTION TO ALTER OR AMEND JUDGMENT AND FOR LEAVE TO FILE THE PROPOSED AMENDED COMPLAINT ........................................24

A. The District Court Did Not Abuse Its Discretion in Finding That CFI Unduly Delayed Seeking Amendment ........25

1. CFI Unduly Delayed by Engaging in "Wait-and-See" Pleading..................................................................26

2. CFI Unduly Delayed by Relying on Information Already Before the District Court or in CFI's Possession and by Burdening the District Court ............28

B. The District Court Did Not Abuse Its Discretion in Finding that CFI's Proposed Amendment Would Be Futile Under Rule 9(b) ..............................................................31

1. Photographs on eBay Cannot Establish the Presence or Absence of Markings .................................33

2. CFI's eBay "Product Study" and Dr. Wyner's Analysis Are Fundamentally Flawed .............................36

3. Amendment Would Have Been Futile Under *Foglia*'s Rule 9(b) Standard ..........................................41

C. While the Failure to Pay Marking Duties Does Not Violate the False Claims Act, That Issue Need Not Be Determined........................................................................44

1. This Court Can Affirm the District Court Without Deciding Whether a Failure to Pay Marking Duties Violates the False Claims Act .......................................44

2. CFI Concedes that the Failure to Pay Marking Duties Pre-FERA Cannot Be a Violation of the False Claims Act..........................................................46

3. Failure to Pay Marking Duties Remains a Regulatory Violation, Not a Violation of the False Claims Act ....................................................................47

CONCLUSION.........................................................................................................54

STATEMENT CONCERNING ORAL ARGUMENT..........................................56

CERTIFICATE OF BAR MEMBERSHIP..............................................................57

CERTIFICATE OF COMPLIANCE PURSUANT TO FEDERAL RULE OF APPELLATE PROCEDURE 32(a)....................................58

CERTIFICATE OF SERVICE .................................................................................59

CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS............................60

CERTIFICATE OF VIRUS CHECK .......................................................................61

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adams v. Gould Inc.*,
739 F.2d 858 (3d Cir. 1984) .......... 25-26

*Am. Textile Mfrs. Institute, Inc. v. The Ltd., Inc.*,
190 F.3d 729 (6th Cir. 1999) .......... 46, 50

*Amed v. Dragovich*,
297 F.3d 201 (3d Cir. 2002) .......... 25

*Arthur v. Maersk, Inc.*,
434 F.3d 196 (3d Cir. 2006) .......... 27

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... *passim*

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... *passim*

*Bjorgung v. Whitetail Resort, LP*,
550 F.3d 263 (3d Cir. 2008) .......... 30

*Burtch v. Milberg Factors, Inc.*,
662 F.3d 212 (3d Cir. 2011) .......... 14, 25, 31

*Cal. Pub. Emps.' Retirement Sys. v. Chubb Corp.*,
394 F.3d 126 (3d Cir. 2004) .......... 27

*CMR D.N. Corp. v. City of Phila.*,
703 F.3d 612 (3d Cir. 2013) .......... 26

*Cotonificio Bustese, S.A. v. Morgenthau*,
121 F.2d 884 (D.C. Cir. 1941) .......... 48

*Cureton v. Nat'l Collegiate Athletic Ass'n*,
252 F.3d 267 (3d Cir. 2001) ....................................................25, 29, 30, 31

*Estate of Olivia ex rel. McHugh v. New Jersey*,
604 F.3d 788 (3d Cir. 2010) ...................................................................26, 30

*Foglia v. Renal Ventures Mgmt., LLC*,
754 F.3d 153 (3d Cir. 2014) ...................................................................*passim*

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009) ...........................................................................22

*Hoyte v. Am. Nat'l Red Cross*,
518 F.3d 61 (D.C. Cir. 2008)...........................................................................48

*In re Adams Golf, Inc. Sec. Litig.*,
381 F.3d 267 (3d Cir. 2004) ...................................................................*passim*

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
678 F.3d 235 (3d Cir. 2012) ...........................................................................16

*Jang v. Boston Scientific Scimed, Inc.*,
729 F.3d 357 (3d Cir. 2013) ...................................................................27, 28

*Krantz v. Prudential Invs. Fund Mgmt. LLC*,
305 F.3d 140 (3d Cir. 2002) ...........................................................................26

*Mann v. Heckler & Koch Def., Inc.*,
630 F.3d 338 (4th Cir. 2010) ...........................................................................52

*Nagle v. Alspach*,
8 F.3d 141 (3d Cir. 1993) ...............................................................................47

*Phillips v. Cnty. of Allegheny*,
515 F.3d 224 (3d Cir. 2008) ...........................................................................22

*Reginella Constr. Co., Ltd. v. Travelers Cas. & Sur. Co. of Am.*,
971 F. Supp. 2d 470 (W.D. Pa. 2013) ..............................................................28

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*,
742 F.2d 786 (3d Cir. 1984) ....................................................................32

*Travelers Indem. Co. v. Dammann & Co., Inc.*,
594 F.3d 238 (2d Cir. 2010) ....................................................................15

*United States ex rel. Bain v. Ga. Gulf Corp.*,
386 F.3d 648 (5th Cir. 2004) ....................................................................48

*United States ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*,
543 F.3d 1211 (10th Cir. 2008) ....................................................................54

*United States ex rel. Doe v. Siouni & Zarr Corp.*,
No. 1:11-cv-04247 (S.D.N.Y. Apr. 9, 2014) ....................................................................51

*United States ex rel. Grubbs v. Kanneganti*,
565 F.3d 180 (5th Cir. 2009) ....................................................................32, 42

*United States ex rel. Harrison v. Westinghouse Savannah River Co.*,
352 F.3d 908 (4th Cir. 2003) ....................................................................21

*United States ex rel. Hefner v. Hackensack Univ. Med. Ctr.*,
495 F.3d 103 (3d Cir. 2007) ....................................................................20, 21

*United States ex rel. Karlin v. Noble Jewelry Holdings Ltd.*,
No. 1:08-cv-07826 (S.D.N.Y. Aug. 29, 2011) ....................................................................51

*United States ex rel. Lobel v. Express Scripts, Inc.*,
351 F. App'x 778 (3d Cir. 2009) ....................................................................15

*United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*,
707 F.3d 451 (4th Cir. 2013) ....................................................................32

*United States ex rel. Rostholder v. Omnicare, Inc.*,
745 F.3d 694 (4th Cir.), *cert. denied*,
135 S. Ct. 85 (2014) ....................................................................53

*United States ex rel. Schumann v. Astrazeneca Pharms. L.P.*,
769 F.3d 837 (3d Cir. 2014) ....................................................................26

*United States ex rel. Valenti v. Tai Shan Golden Aluminum Prods., Ltd.*,
No. 3:11-cv-00368 (M.D. Fla. Nov. 13, 2014) ....................................51

*United States ex rel. Wilkins v. United Health Grp., Inc.*,
659 F.3d 295 (3d Cir. 2011) ....................................22, 46, 53

*United States v. Educ. Mgmt. Corp.*,
871 F. Supp. 2d 433 (W.D. Pa. 2012) ....................................21

*United States v. Q Int'l Courier, Inc.*,
131 F.3d 770 (8th Cir. 1997) ....................................48

*United States v. Sci. Applications Int'l Corp.*,
626 F.3d 1257 (D.C. Cir. 2010) ....................................21

*W. Penn Allegheny Health Sys., Inc. v. Univ. of Pittsburgh Med. Ctr.*,
627 F.3d 85 (3d Cir. 2010) ....................................16, 19

*ZF Meritor, LLC v. Eaton Corp.*,
696 F.3d 254 (3d Cir. 2012) ....................................15, 25, 31

**STATUTES**

19 U.S.C. § 1304 ....................................52

19 U.S.C. § 1304(a) ....................................3, 48

19 U.S.C. § 1304(c)(1) ....................................3

19 U.S.C. § 1304(i) ....................................3, 48, 52

19 U.S.C. § 1485 ....................................52

31 U.S.C. § 3729(a)(1)(B) ....................................46

31 U.S.C. § 3729(a)(1)(G) ....................................19, 46, 49

31 U.S.C. § 3729(a)(7) ....................................46

31 U.S.C. § 3729(b)(2) .................................... 19-20

31 U.S.C. § 3729(b)(3) .......... 49, 50

Pub. L. No. 111-21 § 4(f) .......... 46

**RULES**

Fed. R. Civ. P. 8(a) .......... *passim*

Fed. R. Civ. P. 8(a)(2) .......... 16

Fed. R. Civ. P. 9(b) .......... *passim*

Fed. R. Civ. P. 12(b)(1) .......... 5

Fed. R. Civ. P. 12(b)(6) .......... 5

Fed. R. Civ. P. 15(a) .......... 5, 24, 26, 30

Fed. R. Civ. P. 59(e) .......... 24, 25, 28

**REGULATIONS**

19 C.F.R. § 134.1(k) .......... 34

19 C.F.R. § 141.101 .......... 51

**OTHER AUTHORITIES**

155 Cong. Rec. S4539, 2009 WL 1077017 (daily ed. Apr. 22, 2009) .......... 50

Customs Ruling No. HQ 558707, 1994 WL 911175 (Sept. 13, 1994) .......... 34

Customs Ruling No. HQ 734066, 1991 WL 426111 (July 15, 1991) .......... 34

Customs Ruling No. HQ 734795, 1994 WL 896755 (Oct. 26, 1994) .......... 34

Customs Ruling No. NY N045657, 2008 WL 5568255 (Dec. 24, 2008) .......... 34

Harvey Motulsky, *Intuitive Biostatistics: A Nonmathematical Guide to Statistical Thinking* (1995) .......... 38

George W. Snedecor & William G. Cochran, *Statistical Methods* (8th ed. 1989) ....................................................................................................37

*Why Probability Sampling*, Pew Research Center, http://www.people-press.org/methodology/sampling/why-probability-sampling/ (last visited Sept. 24, 2015) ....................................................................................................37

## STATEMENT OF THE ISSUES

1. Given that Customs Fraud Investigations, LLC's ("CFI") 35-paragraph, single-count Complaint was virtually devoid of non-conclusory factual allegations and failed to allege any facts supporting the requisite scienter for liability under the False Claims Act ("FCA"), whether the District Court properly dismissed the Complaint for failure to satisfy the pleading standards of Federal Rule of Civil Procedure 8(a). JA 42-48.

2. Given that CFI's first de facto amendment of the Complaint failed to allege that the allegedly unmarked pipe fittings listed on eBay were foreign made, or that Victaulic Company ("Victaulic") knowingly concealed or avoided an obligation to pay marking duties, and given that the District Court gave full credit to CFI's first de facto amendment of the Complaint, whether the District Court properly dismissed the Complaint with prejudice. JA 45-48.

3. Given that CFI ignored multiple opportunities to amend its Complaint and offered no reason for its delay, and given that CFI's proposed amended complaint rested almost entirely on information that was already before the District Court or that CFI could have presented to the District Court prior to dismissal, whether the District Court abused its discretion by refusing leave to amend on the grounds of undue delay. JA 69-74.

4. Given that CFI failed to allege particular details of Victaulic's alleged scheme paired with reliable indicia leading to a strong inference that Victaulic is liable for reverse false claims, given that CFI's so-called eBay analysis was inherently flawed because it rested on the assumption that CFI was conclusively able to discern markings from photographs on eBay, and given that there is no valid statistical basis for CFI's conclusions, whether the District Court abused its discretion by refusing leave to amend on the grounds of futility for failure to satisfy Federal Rule of Civil Procedure 9(b). JA 88-101.

5. Given that marking duties are contingent regulatory violations, given that Congress specifically excluded contingent duties from the definition of "obligation" under the FCA, and given that the Government's enforcement focus subsequent to the Fraud Enforcement and Recovery Act of 2009 ("FERA") is consistent with Congress's intent to clarify that customs duties, not marking duties, are actionable under the FCA, whether the District Court abused its discretion by refusing leave to amend on the grounds of futility because an alleged failure to pay marking duties does not violate the FCA. JA 74-88.

## STATEMENT OF RELATED CASES

This case has not previously been before this Court, and Victaulic is not aware of any other related case or proceeding.

## STATEMENT OF THE CASE

Victaulic is the global leader in the production of iron and steel grooved pipe fittings. JA 110. These pipe fittings are used in numerous large-scale construction projects, including oil and water pipelines, water treatment plants, and commercial buildings. JA 306-07. Originally, all of Victaulic's manufacturing plants were located in the United States. JA 110. Since 2003, Victaulic has opened plants in China, Poland, and Mexico, and Victaulic's total amount of imported products has increased. JA 110, 310. Victaulic imports products from China and Poland by ship, and from Mexico by land. JA 308. Pursuant to the Tariff Act, Victaulic's imported pipe fittings (with some exceptions) must be marked with the English name of the country of origin "by means of die stamping, cast-in-mold lettering, etching, engraving, or continuous paint stenciling."[1] 19 U.S.C. § 1304(c)(1).

---

[1] The Tariff Act requires that, subject to certain exceptions, "every article of foreign origin . . . imported into the United States shall be marked in a conspicuous place as legibly, indelibly, and permanently as the nature of the article . . . will permit in such manner as to indicate to an ultimate purchaser in the United States the English name of the country of origin of the article." 19 U.S.C. § 1304(a); JA 7. The Tariff Act further provides that, with some exceptions, "pipes of iron, steel, or stainless steel . . . pipe fittings of steel, stainless steel, chrome-moly steel, or cast and malleable iron . . . shall be marked with the English name of the country of origin by means of die stamping, cast-in-mold lettering, etching, engraving, or continuous paint stenciling." 19 U.S.C. § 1304(c)(1); JA 8. If imported goods are not marked with the country of origin in the prescribed manner, additional payments known as "marking duties" may be due under 19 U.S.C. § 1304(i). JA 8-9.

Each year Victaulic publishes a "General Price List." *See* JA 401. The General Price List describes each of Victaulic's products in detail, including, e.g., physical dimensions, weight, and pricing. JA 401-599. Nowhere does the General Price List provide variable pricing based on the country of manufacture, nor does the General Price List even mention the country of manufacture. *See id.* As a vertically integrated company, Victaulic produces the same quality of product at every plant—each of which is ISO certified—regardless of where the plant is located. *See* Dist. Dkts. 40-2 to 40-4. Victaulic's customers are well aware of Victaulic's global supply chain and know that Victaulic products are manufactured in the United States and in countries around the world. *See id.*

Although CFI describes its business as "conduct[ing] confidential research and analysis related to potential customs fraud," JA 111, CFI does not appear to have any function beyond pursuing this case against Victaulic. CFI was formed in August 2012,[2] which was the same time when CFI began its "investigation" of Victaulic's activities. *See* JA 303. Furthermore, CFI has no website, CFI's "principal office" location is a residential address, and CFI is not a party to any other unsealed litigation. CFI does not have—and never has had—any connection

[2] *See* Charter Record Search for "Customs Fraud Investigations, LLC," available from Maryland Department of Assessments & Taxation, http://sdatcert3.resiusa.org/ucc-charter/Pages/CharterSearch/default.aspx (last visited Sept. 11, 2015).

whatsoever to, relationship with, or knowledge of Victaulic or Victaulic's operations.

On May 30, 2013, CFI filed its sealed 35-paragraph, single-count Complaint against Victaulic. JA 104, 110-18. Barely two months later, on August 7, 2013, the United States Department of Justice declined to intervene, and CFI's Complaint was unsealed. JA 104. On October 10, 2013, Victaulic moved to dismiss the Complaint for lack of jurisdiction under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6). At that time, CFI would have been permitted to amend its Complaint as a matter of course under Rule 15(a). CFI failed to do so. Instead, CFI filed an opposition to Victaulic's motion and attached multiple exhibits in an attempt to bolster the deficient allegations in the Complaint. *See* Opening Brief of Appellant ("CFI Brief"), at 4; JA 334-55, 364-75, 382-97.

The District Court scheduled a hearing on the motion to dismiss more than two and a half months after Victaulic filed its reply. JA 106. CFI could have filed a motion to amend its Complaint at any time within that period—but it did not. At the hearing, the District Court made it clear that the Complaint as drafted failed to state a claim and would be dismissed. JA 70, 194-95. However, the District Court explained that it would nevertheless fully consider the information attached to CFI's briefing to determine whether to dismiss the Complaint with prejudice or to allow CFI to file an amended complaint containing those additional allegations.

JA 7, 70, 193. The District Court's full consideration of CFI's additional information was effectively the first amendment of CFI's Complaint. JA 71.

On September 4, 2014, the District Court entered an Order and Memorandum dismissing the Complaint with prejudice. JA 4-49. The District Court found that the Complaint was "virtually devoid of non-conclusory factual allegations" and therefore failed to satisfy the pleading requirements of Rule 8(a). JA 42-45. The District Court further found that, even taking into account the additional information filed by CFI, CFI had failed to allege a plausible claim against Victaulic. JA 45-48. Because the District Court had already allowed CFI to constructively amend its Complaint, the District Court dismissed the Complaint with prejudice. JA 49.

Despite the District Court's clear warning that the Complaint failed to state a claim, CFI did not file a motion to amend its Complaint at any time during the seven months between the hearing and the dismissal of CFI's Complaint. Instead, CFI adopted a "wait-and-see" approach and chose not to act until one month after the District Court dismissed the Complaint with prejudice. JA 107. On October 2, 2014, CFI filed a motion to alter or amend judgment and for leave to file an amended complaint. The proposed amended complaint ("PAC") attached to CFI's

motion was "essentially CFI's second effort at amendment."[3] JA 71. Victaulic opposed CFI's motion and the PAC on the grounds that permitting CFI to amend would be inequitable and futile.

On April 10, 2014, the District Court entered an Order and Memorandum denying CFI's motion to alter or amend judgment and for leave to file an amended complaint. JA 50-101. The District Court observed that the PAC relied upon the same theory and essentially the same allegations as CFI's Complaint, only with marginally more detail. JA 63. The District Court found that CFI had unduly delayed in seeking to file the PAC because (1) CFI had clear notice that the District Court was considering dismissal with prejudice and (2) the PAC was based on information that was already before the District Court and certain additional information that CFI could have presented to the District Court prior to dismissal. JA 70-72. The District Court also offered two alternative grounds supporting its holding. First, the District Court found that amendment would be futile because the alleged failure to pay marking duties does not constitute a violation of the FCA. JA 83-88. Second, the District Court found that the PAC failed to satisfy the pleading requirements of Rule 9(b). JA 88-101. This appeal followed.

---

[3] For this reason, Victaulic does not adopt CFI's misleading characterization of the PAC as the "First Amended Complaint" or "FAC." Indeed, the PAC was CFI's third attempt to craft a plausible complaint. And as detailed by the District Court, the PAC remained woefully inadequate.

## SUMMARY OF THE ARGUMENT

This case is exactly the kind of parasitic FCA litigation that Congress and the courts have long condemned. The relator CFI is a complete stranger to Victaulic and has absolutely no connection to Victaulic or the underlying transactions that form the basis for its suit. Indeed, CFI was formed simply to bring suit against Victaulic and has never been Victaulic's employee, customer, competitor, agent, or supplier. Moreover, none of Victaulic's employees, customers, competitors, agents, suppliers, or dealers ever noticed, or had any knowledge of, Victaulic's allegedly massive fraud.

Despite having no inside knowledge of Victaulic or its operations, CFI asserted—without any factual support—that Victaulic engaged in a massive, decade-long global fraud by allegedly failing to mark its imported pipe fittings from China and Poland. CFI concedes that all the while, Victaulic was truthfully informing U.S. Customs and Border Protection ("Customs") that Victaulic's products were in fact being imported from China and Poland. Unsurprisingly, CFI's complaints consisted of little more than a series of conclusory allegations based on information from publicly-available websites, including an examination of 221 sales listings on eBay.

CFI's convoluted and implausible theory was not supported by any factual allegations in any of its complaints. But now CFI is asking this Court to overturn

(1) the District Court's original well-reasoned decision to dismiss CFI's Complaint with prejudice (even after permitting CFI to de facto amend its Complaint) and (2) the District Court's later decision—well within its discretion—to deny CFI's motion to alter or amend judgment and for leave to file an amended complaint on the grounds of undue delay and futility. CFI's appeal rests entirely on its claim that its flawed review of 221 incomplete and inconclusive eBay listings plausibly establishes that Victaulic is failing to mark a significant portion of its imported pipe fittings. CFI is wrong, and the District Court's decisions should be affirmed for the following reasons:

I. The District Court properly dismissed CFI's limited and conclusory Complaint with prejudice.

A. CFI's Complaint was "virtually devoid of non-conclusory factual allegations." JA 45. The only factual allegation in the Complaint was that Victaulic imported approximately 83 million pounds of pipe fittings from China and Poland, but CFI failed to provide any context for Victaulic's imports. The Complaint also contained no factual allegations to support CFI's conclusion that Victaulic did not properly mark most of its imported pipe fittings. Moreover, the Complaint failed to allege that any individual, or group of individuals, at Victaulic "knowingly" failed to properly mark Victaulic's imports, thus failing to establish the requisite scienter under the FCA. As such, CFI's bare assertions and legal

conclusions failed to state a claim that was plausible on its face. Indeed, at most, CFI asserted a "sheer possibility" that Victaulic acted unlawfully. But such assertions fail to satisfy the requirements of Rule 8(a), and CFI's Complaint was therefore properly dismissed.

B. CFI admits that the attachment of a declaration and exhibits to its opposition brief in the District Court constituted a de facto amendment of the Complaint, through which CFI sought to address the Complaint's numerous deficiencies. But CFI's first de facto amendment of the Complaint ("First Amendment") still failed to state a claim that was plausible on its face. Indeed, all CFI added in its First Amendment was a declaration explaining how CFI gathered information and made its calculations. But nothing in the declaration supported CFI's conclusory allegations that most of Victaulic's imports are unmarked and that Victaulic knowingly failed to mark those imports. At best, CFI's First Amendment contained allegations "merely consistent with" Victaulic's liability. Because the District Court effectively gave CFI an opportunity to amend its Complaint, and because the First Amendment still failed to state a plausible claim, the Complaint was properly dismissed with prejudice.

II. The District Court did not abuse its discretion by denying CFI's motion to alter or amend judgment and for leave to file the PAC on the grounds of undue delay and futility.

A. CFI unduly delayed in seeking an amendment by engaging in the kind of "wait-and-see" pleading disfavored by this Court. At the hearing on Victaulic's motion to dismiss, the District Court expressly informed CFI that its Complaint failed to state a claim. Despite this clear warning, CFI chose to stand on its Complaint and risk the prospect of a final dismissal order. CFI has offered no explanation for this delay except that it was early in the case—a justification expressly rejected by this Court. Moreover, the PAC did not raise new facts or legal arguments. Almost all of the allegations in the PAC rested on information that was already before the District Court or that was in CFI's possession and could have been presented prior to dismissal. Being required to consider this information a second time placed an unwarranted burden on the District Court. Because CFI ignored the multiple prior opportunities it had to amend the Complaint, and because CFI failed to present new information in the PAC, the District Court did not abuse its considerable discretion in denying leave to amend on the grounds of undue delay.

B. Further amendment would have been futile because the PAC failed to provide "reliable indicia that lead to a strong inference" that Victaulic failed to mark its pipe fittings as required by Rule 9(b). In fact, CFI's entire theory of liability relies on a review of 221 eBay listings for what appear to be Victaulic products. But this "product study" was unreliable and fundamentally flawed. CFI

relied on the assumption that it could discern from a limited number of photographs whether a marking was present. But a marking need only be visible in the "normal handling" of an item, and photographs cannot approximate the multitude of angles visible when handling a product. Indeed, this limited photographic review could not and did not allow CFI to plausibly draw a conclusion as to whether a product was marked.

Furthermore, the eBay study was a convenience sample, not a valid probability sample, and therefore could not be used to make valid statistical inferences. Neither CFI nor Dr. Wyner provided evidence to support CFI's fundamental assumption that the eBay sample was representative of the population of all of Victaulic's products. Indeed, they were incapable of providing such evidence because eBay sellers do not have access to Victaulic's full product line. As a result, the only Victaulic parts offered for sale on eBay would consist of small quantities of overstock and/or other older or counterfeit products. Furthermore, approximately half of the eBay listings were made by only five sellers. In light of these shortcomings, CFI at best described a "mere opportunity" for fraud. Because CFI's product study was "insufficiently reliable" to support CFI's claims, the District Court did not abuse its considerable discretion in denying leave to amend on the grounds of futility.

C. Whether the failure to pay marking duties gives rise to a claim under the FCA need not be addressed—and is certainly not "the threshold legal issue" in this case. Even assuming that a failure to mark gives rise to FCA liability, CFI has repeatedly failed to state a plausible claim against Victaulic.

In fact, a failure to pay marking duties is no more than a regulatory violation, not a violation of the FCA. The pre-FERA reverse false claims provision required the use of a false statement or record to conceal or avoid an obligation. There was no such false statement here because there is no place to list marking duties on Customs Form 7501. Indeed, CFI has conceded that it cannot state a claim regarding Victaulic's pre-FERA imports.

Furthermore, even post-FERA, a failure to mark is no more than a regulatory violation, not a violation of the FCA. Congress initially intended to create liability for the avoidance of contingent duties, including customs duties for affirmatively misrepresenting an imported product's country of origin—a specific type of obligation that does not include a failure to pay marking duties. But the final version of the FCA clearly excluded contingent duties based on Congressional concern that private relators would bring FCA claims based on conduct giving rise to a duty before any duty was actually imposed—exactly the circumstance here. This understanding is consistent with the Government's post-FERA enforcement

focus on a failure to pay customs duties for misrepresenting the country of origin or the value of merchandise, not marking duties.

Allowing FCA liability for an alleged failure to mark would short-circuit the Government's own regulatory procedures and improperly transform the statutory 10 percent marking duty into an automatic 30 percent, non-discretionary penalty. If this Court chooses to address the issue—and it need not—the District Court correctly ruled that there can be no claim under the FCA for a failure to mark.

## STANDARD OF REVIEW

CFI appeals two rulings from the District Court: (1) the grant of Victaulic's motion to dismiss and (2) the denial of CFI's motion to alter or amend judgment and for leave to file the PAC. The District Court's grant of Victaulic's motion to dismiss is reviewed de novo, with this Court applying the same standards as the District Court. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011). The District Court's denial of CFI's motion to alter or amend judgment is reviewed for abuse of discretion. *Id.* The same abuse of discretion standard applies to findings of both undue delay and futility. *See In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 280-81 (3d Cir. 2004).

Abuse of discretion is an "extraordinarily deferential standard," pursuant to which the District Court's decision will not be disturbed unless this Court is "left with a definite and firm conviction that the court below committed a clear error of

judgment." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 286, 293 (3d Cir. 2012) (citation omitted). While CFI suggests that the District Court's finding of futility is subject to de novo review, this Court has expressly considered and rejected that position. *Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 243 n. 3 (2d Cir. 2010) (quoting *In re Adams*, 381 F.3d at 281 n. 13). Rather, a district court abuses its discretion if its finding of futility is based on an erroneous interpretation of the law, which underlying interpretation is subject to plenary review. *Id.* at 243.

## ARGUMENT

### I. THE DISTRICT COURT PROPERLY DISMISSED CFI'S LIMITED AND CONCLUSORY COMPLAINT

When determining whether a complaint has stated a claim, a court accepts all factual allegations as true and draws all reasonable inferences in a plaintiff's favor, but a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see United States ex rel. Lobel v. Express Scripts, Inc.*, 351 F. App'x 778, 779-80 (3d Cir. 2009) ("'bare assertions,' 'legal conclusions,' and 'formulaic recitation[s] of the elements of a cause of action' are 'not entitled to the assumption of truth'"). A complaint that offers mere

"labels and conclusions" or "naked assertion[s]" devoid of "further factual enhancement" "will not do." *Iqbal*, 556 U.S. at 678 (citations omitted).

A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible on its face*.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "While the plausibility standard does not impose a 'probability requirement,' it does demand 'more than a sheer possibility that a defendant has acted unlawfully.'" *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). Such an evaluation is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "Some claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. Univ. of Pittsburgh Med. Ctr.*, 627 F.3d 85, 98 (3d Cir. 2010) (claim for simple battery takes fewer factual allegations than claim for antitrust conspiracy). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). In such circumstances, "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### A. Dismissal of the Complaint Was Proper Because It Failed to State a Claim Under Rule 8(a)

#### 1. The Complaint Failed to Allege Facts Supporting a Claim That Victaulic Failed to Mark Imported Pipe Fittings

The District Court properly concluded that CFI's 35-paragraph, single-count Complaint was "virtually devoid of non-conclusory factual allegations" and failed to state a claim. JA 45. Nowhere in the Complaint were there any factual allegations in support of CFI's conclusion that "Victaulic did not properly mark the vast bulk of its imported pipe fittings . . . in violation of the Tariff Act." JA 115. CFI claimed—without any support—that "almost all of Victaulic's pipe fittings for sale in the U.S. are marked 'MADE IN U.S.A.' or have no country of origin information whatsoever." *Id.* CFI went on to claim—again without support—that "[o]nly a miniscule fraction of Victaulic's pipe fittings for sale in the U.S. bear any indication of their foreign origin, with an even smaller percentage bearing country of origin markings that are compliant with the Tariff Act." *Id.* But CFI offered nothing beyond these bare allegations and legal conclusions. CFI did not explain how it knows that "only a miniscule fraction of Victaulic's pipe fittings for sale in the U.S." are properly marked, and the Complaint failed to allege any facts to support such a conclusion.

At most, based on Exhibit A to the Complaint, CFI alleged that Victaulic imported approximately 83 million pounds of pipe fittings from China and Poland

between 2003 and 2012. *See* JA 119-89. But that factual allegation cannot support CFI's naked assertions that imported pipe fittings constitute a majority of Victaulic's sales or that only a "miniscule fraction" of Victaulic's imports are properly marked. Even accepting as true that Victaulic imported 83 million pounds of pipe fittings from China and Poland, that information is meaningless without context. Such context would include, e.g., the total weight of imported products (including those from Mexico), the type of products imported from China and Poland (which could be larger-scale or heavier products and thus a small number of individual items), and the total amount of Victaulic's sales. Absent this necessary context, CFI's limited factual allegations were facially implausible. Moreover, "CFI provide[d] no basis for its wholly conclusory allegations that Victaulic ha[d] falsified its customs entry documents or knowingly avoided paying any required marking duties." JA 45. At best, the Complaint alleged—but did not show—that CFI is entitled to relief. *See Iqbal*, 556 U.S. at 679.

CFI is simply wrong when it suggests that the District Court imposed "a pleading standard higher than what CFI would be required to prove at trial." CFI Brief, at 53. Rather, the District Court merely required that CFI plead a plausible claim, i.e., allegations showing more than a "sheer possibility" that Victaulic acted unlawfully. *Iqbal*, 556 U.S. at 678. But CFI's Complaint contained virtually no factual allegations, and certainly no factual allegations sufficient to rise "above the

speculative level." *Twombly*, 550 U.S. at 555. CFI now attempts to save its deficient pleading by inappropriately referring to information not contained in the Complaint. *See* CFI Brief, at 53. For example, CFI attempts to rely on the declaration of Dr. Abraham Wyner, but Dr. Wyner's declaration was first filed with CFI's motion to alter judgment and is referenced nowhere in the Complaint or CFI's First Amendment of the Complaint. *See id.* at 53-55; JA 357. Such information is not properly considered to determine the sufficiency of the Complaint under Rule 8(a).

Even assuming that the falsification of Customs documents or the avoidance of marking duties create liability under the FCA, the Complaint's bare assertions and legal conclusions, made without any factual support or enhancement, failed to satisfy the requirements of Rule 8(a). *See Iqbal*, 556 U.S. at 678. The Complaint merely asserted that Victaulic acted unlawfully and failed to include sufficient factual allegations to state a claim that was plausible on its face. *See id.*; *W. Penn*, 627 F.3d at 98. The Complaint was therefore properly dismissed.

**2. The Complaint Failed to Allege Facts Supporting a Claim That Victaulic Had the Requisite Scienter**

The reverse false claims provision imposes liability only when a defendant "knowingly" conceals, avoids, or decreases an obligation. 31 U.S.C. § 3729(a)(1)(G). To act "knowingly," a defendant must have "actual knowledge," "deliberate ignorance," or "reckless disregard" for the truth. 31 U.S.C.

§ 3729(b)(2).[4] The FCA is not meant to "punish honest mistakes or incorrect claims submitted through mere negligence." *United States ex rel. Hefner v. Hackensack Univ. Med. Ctr.*, 495 F.3d 103, 109 (3d Cir. 2007) (citation omitted).

Not surprisingly, CFI—as a complete outsider with no relationship to Victaulic—failed to name a single Victaulic employee or representative by name or position, or to otherwise allege that any person made any statement about the marking of Victaulic's imported pipe fittings. Such an omission is fatal to CFI's claim. *See id.* Even if CFI had attempted to identify individuals with the requisite knowledge to establish liability under the FCA, such individuals would have to be aware of both (1) the alleged lack of markings on the imported pipe fittings and (2) Victaulic's alleged misrepresentations, or concealment, regarding marking duties. The Complaint contained no factual basis to conclude that any individual at Victaulic would have such knowledge. CFI did no more than make the naked assertion that Victaulic "knowingly failed to properly mark" its imported products, and then claim that Victaulic's alleged failure to mark was a violation of the FCA. JA 111. Such conclusory (and circular) allegations are insufficient as a matter of law to state a claim under the FCA. *See Iqbal*, 556 U.S. at 678.

Moreover, to the extent that CFI sought—and failed—to allege the requisite scienter based on a collective knowledge theory, that theory has been rejected as a

---

4 The pre-FERA definition of "knowingly" is substantively identical. JA 639.

basis for liability under the FCA. "[S]cienter may not be based on a 'collective knowledge' theory 'by piecing together scraps of innocent knowledge held by various corporate officials, even if those officials never had contact with each other or knew what others were doing . . . ." *United States v. Educ. Mgmt. Corp.*, 871 F. Supp. 2d 433, 452 (W.D. Pa. 2012) (quoting *United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1275 (D.C. Cir. 2010)); *see also United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 918 n. 9 (4th Cir. 2003). A collective knowledge theory would allow the punishment of "honest mistakes" and "mere negligence." *Hefner*, 495 F.3d at 109. Regardless, the Complaint entirely failed to include any allegations supporting the inference that a group of individuals at Victaulic collectively had knowledge of the alleged misconduct. It was therefore independently proper to dismiss the Complaint on the grounds that it failed to plead facts supporting the requisite scienter.

### B. Dismissal With Prejudice Was Proper Because the First Amendment of the Complaint Failed to State a Claim Under Rule 8(a)

CFI improperly conflates the District Court's dismissal with prejudice with the District Court's refusal to allow CFI to file the PAC and argues that a plaintiff should be given at least one opportunity to amend its deficient complaint. *See* CFI Brief, at 43. But CFI was already given a chance to amend its deficient Complaint when the District Court accepted and carefully considered all of the information in

CFI's First Amendment. *See* JA 12-16, 45-48, 60-62. Indeed, CFI acknowledges that the additional information presented by CFI was a de facto amendment of the Complaint. CFI Brief, at 51. Because CFI was given at least one opportunity to amend the Complaint, CFI's argument is moot. *See United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 314-15 (3d Cir. 2011) (dismissal with prejudice proper where plaintiff could not cure pleading deficiencies); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (district court should provide one opportunity to attempt amendment); *cf. Fowler v. UPMC Shadyside*, 578 F.3d 203, 212 n. 6 (3d Cir. 2009) (it was "of no consequence" that district court foreclosed opportunity to amend by dismissing with prejudice prior to the court's own deadline for amended pleadings).

Moreover, it is clear that CFI's First Amendment of the Complaint failed to state a plausible claim for relief under Rule 8(a). The First Amendment relied exclusively upon the declaration of CFI's president, Rebecca Woodings. *See* JA 382-97. But the District Court noted that the Woodings declaration did "not 'nudge[]' [CFI's] claims 'across the line from conceivable to plausible.'" JA 45-46 (quoting *Iqbal*, 556 U.S. at 680). Rather, the declaration simply explained how CFI gathered information and made calculations. *See* JA 385-96. The declaration, at most, contained sufficient factual allegations to show that a significant portion of Victaulic's sales are of pipe fittings from China and Poland. Nothing in the

declaration supported CFI's entirely conclusory allegations that the majority of Victaulic's imported pipe fittings are unmarked, or that Victaulic knowingly failed to mark its imported products. At best, the First Amendment contained factual allegations "merely consistent with" Victaulic's liability, which is insufficient to state a claim under Rule 8(a). *See Iqbal*, 556 U.S. at 678.

As discussed *supra*, Section I.A.1, CFI is wrong to suggest that the District Court imposed a heightened pleading standard in reviewing the First Amendment, and CFI cannot rely on information not presented to the District Court to save the de facto first amended Complaint. Similarly, CFI is wrong to argue that the District Court "ultimately require[ed] CFI to prove that Victaulic has not paid marking duties, regardless of how remote a possibility." CFI Brief, at 55. The District Court did not require CFI to rule out every possible lawful explanation for the alleged misconduct. Rather, the District Court insisted that CFI plead *any* facts to support its otherwise entirely conclusory allegations. The declaration did not cure the deficiencies in the Complaint because the declaration failed to provide any factual support for the legal conclusion that "Victaulic did not properly mark the vast bulk of its imported pipe fittings . . . in violation of the Tariff Act." JA 115. Similarly, the declaration failed to provide any plausible basis to conclude that Victaulic acted with the requisite scienter.

A relator cannot simply assert that a defendant violated the law without providing any factual support and survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678 ("naked assertion[s]" devoid of "further factual enhancement" "will not do"). CFI's First Amendment of the Complaint failed to show "more than a sheer possibility" that Victaulic acted unlawfully and thus failed to "state a claim to relief that [wa]s plausible on its face." *Id.* Because the District Court effectively gave CFI an opportunity to amend its Complaint, and because the First Amendment failed to address the Complaint's deficiencies, the District Court properly dismissed the Complaint with prejudice.

## II. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY DENYING CFI'S MOTION TO ALTER OR AMEND JUDGMENT AND FOR LEAVE TO FILE THE PROPOSED AMENDED COMPLAINT

After the District Court dismissed CFI's Complaint with prejudice, CFI moved under Rule 59(e) to alter or amend the judgment, seeking leave to file the PAC. When addressing a motion under Rule 59(e), a district court considers the same factors as it considers under Rule 15(a), i.e., undue delay, bad faith, prejudice, or futility. *Burtch*, 662 F.3d at 231. Contrary to CFI's assertion, however, the fact that such motions rely upon the same factors does not mean that leave to amend "shall be freely given" as it would be under Rule 15(a). *See* CFI Brief, at 43-44. Rather, "'the liberality of [Rule 15(a)] is no longer applicable once judgment has been entered' because Rule 15(a) and 59(e) should not be employed

in a manner contrary to 'favoring finality of judgments and the expeditious termination of litigation . . . . that would render those provisions meaningless.'" *Burtch*, 662 F.3d at 231 (quoting *Amed v. Dragovich*, 297 F.3d 201, 208 (3d Cir. 2002)).

"Both a motion to amend a judgment and a motion for leave to amend a complaint are addressed to the sound discretion of the district court." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001). The District Court's decision must not be disturbed unless this Court is "left with a definite and firm conviction" that the District Court "committed a clear error of judgment." *ZF Meritor*, 696 F.3d at 293. Here the District Court denied CFI's motion for three separate—and independently sufficient—reasons: (1) CFI unduly delayed seeking amendment, JA 69-74; (2) amendment would have been futile because the PAC failed to satisfy Rule 9(b), JA 88-101; and (3) amendment would have been futile because an alleged failure to pay marking duties does not violate the FCA, JA 74-88.

**A. The District Court Did Not Abuse Its Discretion in Finding That CFI Unduly Delayed Seeking Amendment**

A district court may deny a motion under Rule 59(e) based solely on a finding of undue delay. *See Cureton*, 252 F.3d at 273. While delay alone may not provide grounds to deny such a motion, *undue* delay is sufficient. *Id.*; *Adams v.*

*Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984) ("at some point, the delay will become 'undue,' placing an unwarranted burden on the court").

### 1. CFI Unduly Delayed by Engaging in "Wait-and-See" Pleading

"Delay is 'undue' when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend." *Estate of Olivia ex rel. McHugh v. New Jersey*, 604 F.3d 788, 803 (3d Cir. 2010); *see Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 144 (3d Cir. 2002) ("A District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them."). This Court has "refused to overturn denials of motions for leave to amend where the moving party offered no cogent reason for the delay in seeking the amendment." *CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612, 629 (3d Cir. 2013).

Here CFI was on notice of the defects in the Complaint two years ago when Victaulic filed its motion to dismiss. *See United States ex rel. Schumann v. Astrazeneca Pharms. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014); JA 70. At that time, CFI could have amended its Complaint as a matter of course under Rule 15(a). CFI failed to do so. Moreover:

> the [District] Court was explicit with CFI at the hearing [on Victaulic's motion to dismiss] about the defects in its initial pleading. The [District] Court twice referred to the complaint as "bare bones" and indicated that the complaint failed to state a claim under governing precedent.

JA 70; *see also* JA 194-95, 228. Despite the District Court's clear warning that CFI's Complaint was woefully inadequate, and despite CFI's expressed intention to amend, CFI chose to stand on its Complaint and the record. Nevertheless:

> The [District] Court effectively considered CFI's verbal request for amendment by ruling on the sufficiency of the complaint as pled and as potentially amended to include the other information in the record. Only after the [District] Court found that amendment would be futile did CFI seek leave to amend and present the [District] Court with an amended pleading.

JA 71.

As the District Court found, this is exactly the kind of "wait-and-see approach to pleading" that this Court disfavors. JA 71 (quoting *Jang v. Boston Scientific Scimed, Inc.*, 729 F.3d 357, 368 (3d Cir. 2013)); *see Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) ("When a party fails to take advantage of previous opportunities to amend, without adequate explanation, leave to amend is properly denied."); *Cal. Pub. Emps.' Retirement Sys. v. Chubb Corp.*, 394 F.3d 126, 165 (3d Cir. 2004) ("Plaintiffs chose at their peril not to heed the District Court's guidance and avail themselves of an opportunity to rectify the deficiencies of the Amended Complaint."); *In re Adams*, 381 F.3d at 280 ("Plaintiffs relied at their peril on the possibility of adding to their complaint, but in doing so they clearly risked the prospect of the entry of a final dismissal order."). CFI's only attempted justification for this undue delay is that the case had not progressed beyond the motion to dismiss stage. *See* CFI Brief, at 45-50. But that explanation

is no explanation at all and has been rejected by this Court as a valid justification for delay. *Jang*, 729 F.3d at 368 (not an abuse of discretion to deny leave to amend—*despite "cursory analysis"*—where plaintiff's only stated reason for delay was that "it was early in the case, the pleadings had not previously been tested, and . . . [the plaintiff was] willing[] to amend the Complaint if necessary.").

### 2. CFI Unduly Delayed by Relying on Information Already Before the District Court or in CFI's Possession and by Burdening the District Court

Undue delay "includes consideration of whether new information came to light or was available earlier to the moving party." *In re Adams*, 381 F.3d at 280. "[A] party cannot, on a Rule 59(e) motion, file an amended complaint that contains new facts and legal arguments that could have been raised before the original complaint was dismissed." *Reginella Constr. Co., Ltd. v. Travelers Cas. & Sur. Co. of Am.*, 971 F. Supp. 2d 470, 479 (W.D. Pa. 2013) (citing *In re Adams*, 381 F.3d at 280-81). Here, however, the PAC "rest[ed] almost entirely on information that was already before the [District] Court or that CFI could have presented to the [District] Court prior to dismissal." JA 72. The PAC reasserted the same bare and conclusory allegations from the Woodings declaration, and most of the exhibits to the PAC were previously presented to the District Court as attachments to the declaration. *See id.*; *see also* Table of Contents to Joint Appendix Volume II.

> Although the [PAC was] more specific and incorporate[d] a majority of the eBay listings and photographs . . . that information could have

> been included with CFI's initial filing, its opposition to Victaulic's motion to dismiss, or in response to the [District] Court's concerns after the hearing.

JA 72.[5] CFI unduly delayed in seeking amendment by withholding this information and relying on "misplaced confidence" in the Complaint. *In re Adams*, 381 F.3d at 280; *Cureton*, 252 F.3d at 274.

Moreover, the District Court found that the interests of judicial economy weighed against allowing CFI to file the PAC. *See* JA 71-72. The District Court had "already spent considerable resources evaluating CFI's claims and thinking through whether any deficiencies in the complaint could be cured." *Id.* By unduly delaying in seeking amendment, CFI required the District Court to "revisit[] issues that could have been addressed earlier." JA 72. Indeed, CFI admits that the District Court "had before it the bulk of the factual allegations in the [PAC] at the time it ruled on CFI's Complaint." CFI Brief, at 47. It was well within the District

---

[5] The only potentially "new" information in the PAC was from an unnamed witness who allegedly recalled that an unnamed customer of Victaulic had observed a packing list at the bottom of one box of inventory that suggested that the unmarked products originated in Poland. JA 94. "However, the non-specific allegations of one [unknown] witness implicating one box of inventory for an unknown customer at an unknown time does not 'lead to a strong inference' that Victaulic has perpetrated a massive fraud involving millions of pounds of product imported over the course of a decade." JA 95. Unsurprisingly, CFI failed to include any information about its alleged witness, and also was unable or unwilling to explain why it presented a series of unverifiable claims from an unknown witness only *after* its Complaint had been dismissed with prejudice.

Court's considerable discretion to conclude that forcing the District Court to reconsider the same issues a second time was an unwarranted burden.

CFI provides no support for its assertion that the District Court's finding of unwarranted burden was improper, focusing instead on whether *Victaulic* was prejudiced. *See* CFI Brief, at 47-48. But this Court has "recognized that the interests in judicial economy . . . may become particularly compelling" where a party ignores opportunities to amend and forces a court to expend its resources in reaching a final judgment. *Cureton*, 252 F.3d at 273. Furthermore, the District Court was simply not required to find that Victaulic was prejudiced to conclude that CFI unduly delayed in seeking amendment. *See* JA 73; *McHugh*, 604 F.3d at 803; *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008).

By arguing that the District Court was governed by the liberal pleading standards of Rule 15(a) and that leave to amend must be granted absent a finding of prejudice to Victaulic, CFI misrepresents the controlling law of this Court. *See* CFI Brief, at 43-48. Moreover, CFI is flatly wrong when it asserts that the District Court created its own "rule" that "a plaintiff must either immediately file an amended complaint whenever a defendant files a motion to dismiss or risk being blamed for 'undue delay' merely for waiting to see how the court rules." *Id.* at 45. In fact, the record shows that the District Court "was explicit with CFI about its assessment of the complaint" at the January 23, 2014, hearing, "twice stating that

the pleading was 'bare bones,' and observing that it was based on 'conclusory kinds of facts that . . . under Twombly and Iqbal really don't carry the day." JA 57-58. Despite CFI clearly being told that its Complaint was inadequate nearly eight months before the District Court issued its ruling, CFI did nothing.

In sum, the record shows that the District Court properly exercised its considerable discretion in accordance with the law of this Circuit when it determined that CFI unduly delayed in seeking amendment. *See* JA 69-74. And while "[t]he refusal to grant leave without any justification for the denial can be an abuse of discretion," that is simply not what occurred here. *Cureton*, 252 F.3d at 276. Indeed, the District Court's comprehensive analysis cannot leave this Court with a "definite and firm conviction" that the District Court "committed a clear error of judgment." *ZF Meritor*, 696 F.3d at 293. Because the District Court did not abuse its discretion, its ruling must be affirmed.

### B. The District Court Did Not Abuse Its Discretion in Finding that CFI's Proposed Amendment Would Be Futile Under Rule 9(b)

The District Court's denial of leave to amend is appropriately affirmed based solely on the District Court's finding that CFI unduly delayed. Independently, the District Court's ruling is also appropriately affirmed based on the futility of amendment for failure to satisfy the requirements of Rule 9(b). *See Burtch*, 662 F.3d at 231. Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." To satisfy Rule 9(b), a relator must

"provide 'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.'" *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 157-58 (3d Cir. 2014) (quoting *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)). "Describing a mere opportunity for fraud will not suffice." *Id.* at 158.

Moreover, as the District Court observed, Rule 9(b) "'stand[s] as a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later.'" JA 89 (quoting *Grubbs*, 565 F.3d at 185). The heightened pleading standards required for claims of fraud are meant to "'safeguard defendants against spurious charges of immoral and fraudulent behavior.'" *Id.* (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)). "'[A] claim brought under the [FCA] that rests primarily on facts learned through the costly process of discovery is precisely what Rule 9(b) seeks to prevent.'" *Id.* (quoting *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 456 (4th Cir. 2013)) (alterations in original).

Assuming that a failure to mark gives rise to a claim under the FCA, CFI's theory of liability can be summarized as follows:

1. Victaulic imports a significant amount of pipe fittings from China and Poland.

2. Victaulic's imports from China and Poland require a marking.

3. A small selection of listings on eBay for what appear to be Victaulic products include photographs in which a country of origin marking is not visible.

4. Therefore, Victaulic has engaged in a massive, decade-long scheme to import all products from China and Poland absent markings.

*See generally* JA 302-33. This far-fetched theory relies entirely on CFI's "product study"—a review of 221 eBay listings. But the District Court found that CFI's analysis was "insufficiently reliable to support [CFI's] conclusion . . . because it use[d] unreliable methods." JA 91. This finding was not an abuse of discretion.

#### 1. Photographs on eBay Cannot Establish the Presence or Absence of Markings

The District Court found that CFI's eBay analysis was inherently flawed because it "rest[ed] on the assumption that [CFI] was able to discern from photographs on the internet whether a given product was marked." JA 91. But of the eBay listings considered by CFI, only 82 percent "allegedly had one or more 'clear' photographs (a subjective assessment) from which CFI 'was able to determine with 95% confidence whether a marking was present or not.'" *Id.* CFI provided no explanation for how it was allegedly able to reach its determinations with 95 percent confidence. The District Court noted that CFI's "figure appears to be an assumption based on CFI's subjective assessment of its ability to make a marking determination from a photograph rather than any data." JA 92.

Moreover, a limited review of "pictures on eBay, which are one-dimensional rather than three-dimensional, does not reliably allow one to draw a conclusion as to whether the depicted product is marked, especially since there is no indication that sellers were making an effort to display markings in the photographs." *Id.*

Indeed, Victaulic demonstrated the limits of such photographs at the motion to dismiss hearing. Victaulic presented a series of four photographs of the same marked product from different angles, yet only one of the photographs revealed the marking. *See* JA 376-81; JA 202-03.[6] While Victaulic showed that even three photographs of a single item omitted a conspicuous country of origin marking,

---

[6] Confronted with one of the many unmitigated flaws in its "study," CFI claimed without support that the photographed product was improperly marked because the marking appeared on the inside of the rim of the product. *See* JA 324. But CFI failed to note that markings need only be "capable of being easily seen with normal handling of the article or container." 19 C.F.R. § 134.1(k). Photographs are an inadequate method of determining whether a product is marked precisely because they cannot provide the same opportunity for rotation and movement that is available in the "normal handling of the article."

Moreover, Customs has explained that markings "should be large enough so that the ultimate purchasers can easily see the marking without strain," Customs Ruling No. HQ 734795, 1994 WL 896755, at *6 (Oct. 26, 1994), and in a location where they can be located "easily upon a casual inspection," Customs Ruling No. HQ 734066, 1991 WL 426111, at *3 (July 15, 1991). *See also, e.g.*, Customs Ruling No. NY N045657, 2008 WL 5568255, at *1 (Dec. 24, 2008) (for shirt, marking on inside rear neckline sufficiently conspicuous); Customs Ruling No. HQ 558707, 1994 WL 911175, at *2 (Sept. 13, 1994) (for watch bracelet, marking on side of exterior folding plate of closure sufficiently conspicuous). The marking in the photographs presented to the District Court met these requirements but was only visible in one of four photographs.

nearly 93 percent of the eBay listings provided by CFI included three or fewer photographs of an item, and nearly 42 percent included only a single photograph. *See generally* Dist. Dkts. 37-10 to 37-21. Moreover, nearly 47 percent of the listings with three or fewer photographs appeared to be for more than one item. *See generally id.*; JA 364-75.

"The only sufficiently reliable assessments of markings are those made by CFI after purchasing the products from eBay." JA 93. But CFI's own allegations regarding its purchases "illustrate the limits" of CFI's analysis:

> When CFI selected a sample of nine products to purchase from the eighteen percent of photographs it designated as "unclear," one of the products purchased was not even marked as a Victaulic product and had to be excluded from the study. [JA 322.] Furthermore, upon purchasing items for sale, CFI realized that "approximately half of the Victaulic pipe fittings CFI purchased were, in fact, marked as made in the U.S.A., *although they appeared from the eBay listings to be unmarked*." [JA 322-23.]

JA 93 (emphasis added). These results are not remotely close to a "reliable indicia" leading to a "strong inference" that Victaulic failed to mark its imported pipe fittings.

CFI attempts to save the PAC by asserting that the District Court improperly rejected CFI's factual allegations and relied upon its own subjective judgments. *See* CFI Brief, at 39-41. But the District Court was not bound to blindly accept every word of the PAC as true. Rather, the District Court properly differentiated CFI's few factual allegations, which were accepted as true, from CFI's "naked

assertion[s]" and "legal conclusion[s] couched as a factual allegation," which were carefully considered and then disregarded. *Iqbal*, 556 U.S. at 678. For example, the District Court properly disregarded CFI's legal conclusion that a marking would have been viewable from the limited photographs on eBay. *See* JA 320. Similarly, the District Court refused to draw implausible inferences from CFI's limited factual allegations. For example, the District Court accepted the factual allegation that two-thirds of the eBay listings provided some view of the inside of a product. *See* JA 92. However, the District Court refused to accept CFI's baseless assertion that "some view" of some products allowed CFI to conclusively determine whether all products were marked. CFI fails to cite a single factual allegation that the District Court disregarded. In fact, the District Court went out of its way to give CFI every benefit of the doubt. But at the end of the day, CFI's unsupported and entirely conclusory PAC failed to meet the standards of Rule 9(b), and the District Court was well within its discretion to deny leave to amend.

#### 2. CFI's eBay "Product Study" and Dr. Wyner's Analysis Are Fundamentally Flawed

"Even if CFI had accurately assessed whether a given product sold on eBay was marked, its study still [did] not lead to the conclusion that the unmarked products are foreign made, rather than U.S.-made." JA 93. That is because CFI and Dr. Wyner improperly treated the 221 listings on eBay as a random sample or

probability sample, which is required to make any valid statistical inference.[7] But the eBay study was not a probability sample; it was a convenience sample, which means "there is no theoretical basis for computing or reporting a margin of sampling error and thus for knowing how representative the sample is of the population as a whole."[8]

CFI and Dr. Wyner ignored this fundamental issue. Instead, Dr. Wyner articulated two assumptions (and improperly relied on other unstated assumptions) that underlie all of his analyses and conclusions. The first assumption is that imported pipe fittings constitute a significant portion of Victaulic's U.S. sales in the last decade. JA 359. But as discussed *supra*, Section I.A.1, it is impossible to

---

[7] A probability sample is a sample from a population that satisfies three conditions: (1) every member of the population has some chance of being selected for the sample, and the probability of selection is known; (2) the sample is drawn by some method of random selection consistent with these probabilities; and (3) the probabilities are taken into account in making estimates based on the sample. The simplest and most common case of a probability sample is a simple random sample, in which every object in the population has an equal chance of being selected for the sample, but there are also other, more complicated forms of probability sampling. George W. Snedecor & William G. Cochran, *Statistical Methods* 434-35 (8th ed. 1989).

[8] *Why Probability Sampling*, Pew Research Center, http://www.people-press.org/methodology/sampling/why-probability-sampling/ (last visited Sept. 24, 2015); *see also* Snedecor & Cochran, *supra* note 7, at 435 ("One drawback of [nonprobability sampling methods] is that when the sample has been obtained, there is no way to determine how precise the estimator is . . . . Probability sampling formulas for the standard error of the estimator or for confidence limits do not apply to these methods.").

know what constitutes a significant portion of Victaulic's sales without providing context regarding Victaulic's imports.

The second assumption is that the products in the eBay study sample contain "a proportion of imported products at least approximately similar to the proportion of imported products among all U.S. sales and that any significant deviation is caused only by chance." JA 360. This key—yet fatally flawed—assumption that the eBay sample is representative of the population of all Victaulic products[9] is unsupported by any evidence in Dr. Wyner's declaration or in the record.[10] Even if the eBay sellers had been of diverse location and size, *see* JA 392, CFI still ignored

---

9 "The validity of statistical calculations [based on a convenience sample] depends on the assumption that the results obtained from this convenience sample are similar to those you would have obtained had you randomly sampled from the population." Harvey Motulsky, *Intuitive Biostatistics: A Nonmathematical Guide to Statistical Thinking* 6 (1995).

10 Dr. Wyner concedes that it is possible that the "eBay market is heavily favored toward U.S. Victaulic products," though he finds this "difficult to imagine." JA 360. But there is no reason to suppose Dr. Wyner's statistical expertise grants him any special insight into the secondary market for pipe fittings beyond what is supported by tangible evidence. And in this case, there are no factual allegations to support the view that eBay is a representative market. Dr. Wyner also invokes economic principles to argue that "if the price of U.S. products has risen due to demand increases, than [sic] there should be an over-supply of imported products on the secondary market, not an under-supply." JA 363. But this is another unsubstantiated assumption. There is no reason to believe that the price of U.S. products has risen due to increased demand, and general economic principles cannot provide an adequate accounting of the origin and marketing of the small number of specific products on eBay.

the significant, systemic differences between secondary and primary market product sources.

CFI nevertheless used its tiny sample of products for sale in a secondary market to attempt to draw conclusions about the entire market of Victaulic products. But statistical inference is impossible with such a nonprobability sample without detailed and specific information regarding the selection process that generated the sample. CFI and Dr. Wyner provided no such information here. CFI made no factual allegations regarding the process by which products do or do not enter the secondary market and are placed for sale on eBay. However, because Victaulic and its dealers do not sell on eBay, Victaulic's full product line is not available on eBay. Resellers on eBay would only have access to small quantities of overstock and/or older, used, salvaged, stolen, or counterfeit products. Indeed, CFI admitted that one of the few products it actually purchased, though represented on eBay as a Victaulic product, "had no Victaulic logo" and had to be excluded from review. JA 322. Moreover, approximately half of the eBay listings were made by only five sellers. *See* JA 365-75.

Dr. Wyner argued that, even if the eBay sample is not representative, it would need to be significantly different from the general population of Victaulic's sales to support a conclusion other than the conclusion that a substantial amount of imported products are not properly marked. *See* JA 360. But neither CFI nor Dr.

Wyner alleged any facts to suggest that the selection process for eBay would make eBay at all similar to the general population of Victaulic's sales. Indeed, the District Court properly noted that there were numerous reasons that eBay would not be a representative market. *See* JA 46-47, 62. Moreover, it is not difficult to imagine a sample selection process that would create an association between the probability that a product appears on eBay and the probability that the product is imported or properly marked. For example, eBay sellers may be more likely to sell U.S.-made products or may be less likely to sell products with foreign markings.[11] Any such association would result in misleading generalizations about Victaulic products in general.[12]

---

[11] This example is particularly plausible given CFI's (unsupported) argument that Victaulic's U.S.-made products command a higher price.

[12] Dr. Wyner seeks to justify CFI's reliance on indirect evidence in eBay listings by providing a specious example of the valid use of indirect statistical evidence. *See* JA 359. In the cited study of cheating in public schools, the authors used a sample of essentially every third to seventh grade classroom, from every public school in Chicago, from 1993 to 2000, to draw an inference about the behavior of teachers in those classrooms. *See* Brian A. Jacob & Steven D. Levitt, *Rotten Apples: An Investigation of the Prevalence and Predictors of Teacher Cheating*, The Quarterly Journal of Economics, Aug. 2003, at 843, *available at* http://pricetheory.uchicago.edu/levitt/Papers/JacobLevitt2003.pdf. A more apt analogy to CFI's reasoning would not be that study as conducted, but rather a hypothetical study reaching the same conclusions based on data from one classroom, in one school, taught by one teacher, who used a different curriculum from any other teacher. Such is the relationship of the 221 eBay listings to the general population of Victaulic products.

Here CFI just looked at the photographs in 221 eBay listings—purchasing only nine products to actually examine—and assumed that the lack of a visible marking meant that a product was not properly marked. This assumption was disproved by at least 60 percent of CFI's actual purchases: at least 10 percent were apparently counterfeit; at least 40 percent had U.S. markings despite appearing on eBay to be unmarked; and at least 10 percent were unmarked but made in the United States based on their labeling. *See* JA 322.

CFI's eBay "product study" was flawed from the start. The various uncertainties in CFI's and Dr. Wyner's analyses demonstrate that it is inappropriate to use inferential statistical techniques to draw general conclusions about Victaulic's products based on the sample of products on eBay. Simply put, CFI had no basis to conclude that an unmarked product on eBay was manufactured outside the United States, and CFI and Dr. Wyner had no basis to claim "with 99.9% certainty" that Victaulic failed to mark its imported products. The District Court thus did not abuse its discretion in concluding that CFI's analysis was "insufficiently reliable" to support CFI's claims. JA 91.

### 3. Amendment Would Have Been Futile Under *Foglia*'s Rule 9(b) Standard

CFI seeks to rely on this Court's decision in *Foglia* to argue that the PAC's implausible, conclusory claims satisfy Rule 9(b). *See* CFI Brief, at 36-39. But CFI did not—and cannot—meet the *Foglia* standard, which requires a plaintiff to

"provide 'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.'" *Foglia*, 754 F.3d at 157-58 (quoting *Grubbs*, 565 F.3d at 190). CFI claims that it can meet that standard by "alleging instead only a series of facts giving rise to a *possibility* of fraud," CFI Brief, at 37 (emphasis in original), but this Court has never articulated such a rule. Indeed, CFI's interpretation of *Foglia* renders Rules 8(a) and 9(b) meaningless and invalidates *Twombly* and its progeny.

In *Foglia*, this Court expressly stated that "[d]escribing a mere opportunity for fraud [as CFI has done] will not suffice." *Foglia*, 754 F.3d at 158. There the relator was able to present detailed and specific factual allegations about how and why the defendant allegedly defrauded Medicare by "charging the government as if it were using vials of [a medication] in the single use fashion while actually harvesting and using 'extra' [medication] from the vials." *Id.* Even with such detailed allegations, this Court explained that it was "a close case as to meeting the requirements of Rule 9(b)." *Id.* In fact, those detailed allegations alone were insufficient to establish a "strong inference" that false claims had been submitted. *Id.* Instead, this Court relied on inventory and patient logs in the record, which were consistent with the relator's theory, to hold that the requirements of Rule 9(b) were met. *Id.*

Here CFI failed to allege any facts supporting a “strong inference” that Victaulic had engaged in its allegedly massive scheme. CFI makes a passing reference to Buy American Act projects, and claims that Victaulic’s incentive for its alleged decade-long fraud was to gain additional profits from an alleged price premium for U.S.-made products. *See* CFI Brief, at 38. But CFI provides no factual allegations to support this alleged price premium paid by Victaulic customers. The reason is simple: Victaulic’s General Price List, expressly relied upon by CFI, does not indicate any price differential based on country of manufacture. *See* JA 310-12, 400-599. That is because, as a global manufacturer, Victaulic charges the same price regardless of where a product is manufactured. *See* Dist. Dkts. 40-2 to 40-4.

CFI has not alleged any facts about Victaulic’s pricing that would contradict the information in Victaulic’s publicly-available General Price List. Indeed, CFI has made no factual allegations of any kind about Victaulic’s pricing or about Victaulic’s participation in, or profit from, Buy American Act projects—because CFI has no actual knowledge of Victaulic or its operations. Unlike the relator in *Foglia*, who was employed by the defendant and had actual knowledge of the defendant’s business, CFI is a complete stranger to Victaulic. *See Foglia*, 754 F.3d at 154. CFI has no knowledge of Victaulic’s production, marking, imports, or

pricing beyond Victaulic's publicly-available General Price List and information about Victaulic imports on publicly-available databases.

CFI completely failed to provide any details of Victaulic's alleged scheme, let alone "particular details . . . paired with reliable indicia" leading to a strong inference that Victaulic made false claims. *Id.* at 157-58. Instead, CFI's entire theory rests on an unreliable and statistically unsound review of 221 eBay listings that are simply not representative of Victaulic's overall sales. The District Court did not abuse its discretion in concluding that CFI's description of a "mere opportunity for fraud" was insufficient to satisfy Rule 9(b) and that amendment would thus be futile. *Id.* at 158.

### C. While the Failure to Pay Marking Duties Does Not Violate the False Claims Act, That Issue Need Not Be Determined

#### 1. This Court Can Affirm the District Court Without Deciding Whether a Failure to Pay Marking Duties Violates the False Claims Act

Contrary to CFI's assertion that "the threshold legal issue" is whether an alleged failure to pay marking duties gives rise to a claim under the FCA, CFI Brief, at 15, this Court need not address the issue at all. Indeed, this Court can and should affirm the District Court's denial of leave to amend based on the District Court's findings either that CFI unduly delayed in seeking amendment or that amendment would be futile for failure to satisfy Rule 9(b)—findings that were in no way an abuse of discretion. To that extent, this Court can disregard the majority

of the briefing submitted by CFI and the Government. *See* CFI Brief, at 15-35; Amicus Curiae Brief of the United States ("Government Brief"), at 1-14.

Indeed, even assuming that a failure to mark (absent any other false statement) gives rise to liability under the FCA, CFI still had to satisfy the pleading standards under the Federal Rules and sufficiently allege fraudulent conduct by Victaulic. As discussed *supra*, Section II.B, the PAC entirely failed to satisfy the heightened pleading standards of Rule 9(b). Instead, CFI relied upon naked assertions and legal conclusions couched as factual allegations in an attempt to force Victaulic to spend vast sums of money defending against an entirely baseless and implausible claim. It simply cannot be that CFI's circular and unsupported assertions—i.e., Victaulic's alleged failure to mark constituted a knowing submission of false information to the Government—can survive a motion to dismiss.

Under this rationale, the pleading requirements of *Twombly* and its progeny would cease to have any meaning. CFI's position would enable a naked assertion that a defendant violated the FCA to serve as a factual allegation that could not be challenged on a motion to dismiss. That is simply not the law. And regardless of whether marking duties can give rise to liability under the FCA, CFI has repeatedly failed to state a plausible claim against Victaulic.

### 2. CFI Concedes that the Failure to Pay Marking Duties Pre-FERA Cannot Be a Violation of the False Claims Act

The pre-FERA reverse false claims provision imposed liability on a person who "knowingly" used a "false record or statement to conceal, avoid, or decrease an obligation to pay" the Government. JA 638 (31 U.S.C. § 3729(a)(7)). This language governs all conduct prior to the date of FERA's enactment. *See Wilkins*, 659 F.3d at 303-04 ("FERA contains a retroactivity provision which applies only to section 3729(a)(1)(B)," not the reverse false claims provision in section 3729(a)(1)(G)); Pub. L. No. 111-21 § 4(f). As detailed by the Government, the pre-FERA version of the reverse false claims provision imposed liability *only* when a false statement or record was used to conceal or avoid an obligation. *See* Government Brief, at 8; *see also* JA 638 (31 U.S.C. § 3729(a)(7)); *Am. Textile Mfrs. Institute, Inc. v. The Ltd., Inc.* (hereinafter "*ATMI*"), 190 F.3d 729, 734 (6th Cir. 1999).

Here there is no false statement or record at issue. Instead, CFI made only the conclusory allegation that Victaulic "knowingly falsified customs documents." JA 111. But there is no question that Victaulic properly identified China and Poland as the countries of origin on its Customs forms. Indeed, CFI could not have conducted its "import analysis" if Victaulic had not properly identified China and Poland as the countries of origin. *See* JA 218; *see also* JA 10-11. CFI's allegation relates solely to the claim that Victaulic allegedly failed to list marking duties on

Customs Form 7501. *See* JA 220-21. But the Instructions for Form 7501 show that marking duties are not meant to be identified anywhere on the form.[13]

Victaulic cannot be liable under the FCA for any pre-FERA imports because there is no basis to infer that Victaulic made a false statement on a Customs form—especially when there is no place on the form to even list such marking duties. Indeed, CFI concedes the invalidity of its claims based on Victaulic's imports from 2003 to 2009. *See* CFI Brief, at 12; *Nagle v. Alspach*, 8 F.3d 141, 143 (3d Cir. 1993) ("When an issue is . . . not pursued in the argument section of the brief, the appellant has abandoned and waived that issue on appeal."). As such, the District Court's rulings must be affirmed for all of Victaulic's pre-FERA imports.

#### 3. Failure to Pay Marking Duties Remains a Regulatory Violation, Not a Violation of the False Claims Act

CFI now seeks to recast its case on appeal by focusing solely on Victaulic's post-FERA imports. *See* CFI Brief, at 12. CFI's theory of liability rests on Victaulic's alleged failure to pay marking duties under the Tariff Act. But "the reverse false claims act does *not* extend to . . . potential or contingent obligations to

---

[13] Specifically, marking duties would not be listed in Column 29 or Block 34 because marking duties are not on the list of required fees and are not fees due at the time of entry. JA 601, 621, 625; *see* JA 220-21. Similarly, marking duties would not be listed in Block 39 because marking duties are not on the enumerated list of duties and fees. JA 601, 625-26; *see also* JA 81-82, 16-19 (District Court analysis of Form 7501).

pay the government . . . ." *United States ex rel. Bain v. Ga. Gulf Corp.*, 386 F.3d 648, 658 (5th Cir. 2004) (emphasis in original); *see Hoyte v. Am. Nat'l Red Cross*, 518 F.3d 61, 67 (D.C. Cir. 2008) ("an unassessed potential penalty for regulatory noncompliance does not constitute an obligation that gives rise to a viable FCA claim"); *United States v. Q Int'l Courier, Inc.*, 131 F.3d 770, 773 (8th Cir. 1997).[14] CFI has not and cannot point to any case law suggesting otherwise. Instead, CFI invokes legislative history on the amendment of the FCA, but that history does not support CFI's position and is inconsistent with the final version of the post-FERA reverse false claims provision.

FERA resulted in two relevant changes to the FCA. First, FERA amended the text of the reverse false claims provision itself, creating liability for a person who "knowingly conceals or knowingly and improperly avoids or decreases an

---

[14] Victaulic agrees with the implication in the Government's briefing that this Court need not decide whether marking duties are penalties, or whether penalties can give rise to a reverse false claim. *See* Government Brief, at 11-12. However, Victaulic notes that the language stating that marking duties "shall not be construed to be penal" does not resolve the issue. 19 U.S.C. § 1304(i). Regardless of the terms used in the statute, the question is whether the effect is penal. *See Cotonificio Bustese, S.A. v. Morgenthau*, 121 F.2d 884, 887-88 (D.C. Cir. 1941). The purpose of the marking requirement is to require information to allow the ultimate purchaser to learn the country of origin. *See* 19 U.S.C. § 1304(a). The payment of a duty for a failure to mark does not address that purpose, but rather punishes the importer for its failure to comply with the marking requirement. *See Cotonificio*, 121 F.3d at 888. This penal effect means that marking duties are properly viewed as penalties.

obligation to pay" the Government. 31 U.S.C. § 3729(a)(1)(G). Second, it added to the FCA a definition of the word "obligation" (which had not previously been defined):

> an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment.

31 U.S.C. § 3729(b)(3). Neither the expansion of reverse false claims liability nor the addition of a definition for the word obligation supports CFI's theory.

Initially, Congress had proposed a different definition of obligation:

> a fixed duty, *or a contingent duty* arising from an express or implied contractual, quasi-contractual, grantor-grantee, licensor-licensee, fee-based, or similar relationship, including customs duties for *mismarking country of origin*, and the retention of any overpayment."

JA 674 (emphasis added). By these express terms, Congress first proposed to create liability for contingent duties, including customs duties for misstating the country of origin.[15]

---

[15] These duties are "a singular type of obligation that is specific and not a general class of obligations." JA 658. Such duties apply only when an importer makes a false statement to the Government about the country of origin of the imported goods, e.g., claiming that goods are from Malaysia even though they are actually from China. An importer may make such misrepresentations to avoid anti-dumping or countervailing duties or a higher tariff rate (also known as engaging in "transshipment"). Transshipment is distinctly different than Victaulic's alleged failure to mark its imports, which might result in a decision by Customs imposing the 10 percent marking duty. Indeed, CFI has acknowledged that Victaulic properly disclosed its imports' true country of origin, JA 218, and CFI would have been unable to conduct its "analysis" if Victaulic had not properly disclosed the country of origin.

Congress proposed this definition in response to the Sixth Circuit's *ATMI* decision, which narrowly defined "obligation" to mean only fixed—i.e., not contingent—obligations, and thereby prevented FCA liability for affirmative false statements to the Government. JA 218. Subsequently, Congress modified its proposed definition to remove the language "including customs duties for mismarking country of origin." JA 716. Congress believed this language to be unnecessary given the proposed definition of obligation—i.e., a definition *including contingent obligations*. JA 707. Again, the goal was to create liability for contingent obligations, including tariffs, anti-dumping and countervailing duties, and customs duties for misrepresenting an imported product's country of origin. *See id.*

As enacted, however, the definition of obligation does not include any reference to contingent duties. *See* 31 U.S.C. § 3729(b)(3). The legislative history upon which CFI relies thus refers to text that is not actually included in the FCA. Instead, the final definition clearly excludes contingent duties—like marking duties—to prevent the possibility that conduct giving rise to a duty could become actionable under the FCA before the duty is actually imposed. 155 Cong. Rec. S4539, 2009 WL 1077017 (daily ed. Apr. 22, 2009) (statement of Sen. Kyl regarding Amendment No. 985) ("It is unlikely that Justice would ever have brought suit to enforce a claim of this nature, but the FCA can also be enforced by

private relators who often may be motivated by personal gain and not always exercise the same good judgment that the Government usually does.”).

There is simply no evidence that FERA transformed a marking duty violation—i.e., a potential regulatory violation—into a false claim subject to treble damages. Indeed, since the FERA amendments in 2009, the only FCA cases relating to customs duties have involved duties owed based on misrepresenting the country of origin or the value of the merchandise, not marking duties. This enforcement focus is consistent with Congress’s intent to clarify that customs duties—not marking duties—are actionable under the FCA. Indeed, these post-FERA enforcement actions all involve false statements regarding the country of origin to avoid customs duties or a higher tariff rate; they have nothing to do with a failure to mark. *See, e.g.*, *United States ex rel. Valenti v. Tai Shan Golden Aluminum Prods., Ltd.*, No. 3:11-cv-00368, Dkt. No. 11, at 2 (M.D. Fla. Nov. 13, 2014); *United States ex rel. Doe v. Siouni & Zarr Corp.*, No. 1:11-cv-04247, Dkt. No. 33, at 3 (S.D.N.Y. Apr. 9, 2014); *United States ex rel. Karlin v. Noble Jewelry Holdings Ltd.*, No. 1:08-cv-07826, Dkt. No. 18, at 3-4 (S.D.N.Y. Aug. 29, 2011).

The fraud in such cases is clear. At the time an item enters into the United States, an importer is required to pay certain duties based on a tariff rate for the item type and country of origin. *See* 19 C.F.R. § 141.101. At that same time, the importer certifies the product, value, and country of origin to the government. *See*

19 U.S.C. § 1485. While many imported items are required to be properly marked, no associated certification is required. *See generally* 19 U.S.C. § 1304. As the District Court observed, *see supra*, Section II.C.2, Customs Form 7501 does not require the importer to certify that the imported items are properly marked, nor is there a location on Form 7501 to list marking duties. *See* JA 16-19, 81-82, 601, 621, 625-26. Moreover, unlike other fees and duties, and contrary to the Government's argument, marking duties are not assessed or paid at the time of importation. *See* Government Brief, at 10. Rather, an obligation to pay marking duties arises only when the importation of unmarked goods is detected after entry into commerce, and then only if the goods are not remarked, exported, or destroyed. *See* 19 U.S.C. § 1304(i); *see also* JA 25-31.

Because marking duties are contingent, this case presents exactly the situation that Congress meant to avoid: CFI is attempting to hold Victaulic liable under the FCA for allegedly failing to mark its imports even though no marking duty is owed. Such regulatory violations are not, and cannot be, actionable under the FCA. Indeed, courts have explained that while correcting regulatory problems may be a worthy goal, regulatory problems "are not actionable under the FCA in the absence of *actual fraudulent conduct*." *Mann v. Heckler & Koch Def., Inc.*, 630 F.3d 338, 346 (4th Cir. 2010) (citation omitted) (emphasis added). But as the District Court previously observed, CFI has never made clear "at what point

Victaulic could plausibly be said to have knowingly concealed or avoided an obligation to pay marking duties, or made a false statement or deliberate omission in connection with its alleged avoidance." JA 42. Moreover, if this Court were to accept CFI's theory of liability based on a regulatory violation, the FCA would improperly displace Customs' entire regulatory scheme related to marking duties. The FCA would then become "a sweeping mechanism to promote regulatory compliance, rather than a set of statutes aimed at protecting the financial resources of the government from the consequences of fraudulent conduct." *United States ex rel. Rostholder v. Omnicare, Inc.*, 745 F.3d 694, 702 (4th Cir.), *cert. denied*, 135 S. Ct. 85 (2014).

It is important to remember that Customs has broad powers and discretion to enforce its own regulations governing marking duties. Imposing FCA liability based on an alleged failure to comply with those regulations would "short-circuit the very remedial process the Government has established to address non-compliance with those regulations." *Wilkins*, 659 F.3d at 310; *see Rostholder*, 745 F.3d at 702. Indeed, imposing FCA liability for a failure to mark would transform the statutory 10 percent marking duty into an automatic 30 percent penalty over which Customs has no control. Creating such an onerous and all-encompassing penalty for an alleged regulatory violation, while simultaneously stripping Customs of its discretionary authority to enforce its own regulations, is simply not

what Congress intended. "It would thus be curious to read the FCA, a statute intended to protect the government's fiscal interests, to undermine the government's own regulatory procedures." *United States ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1222 (10th Cir. 2008).

Should this Court choose to address the issue of whether an alleged failure to mark gives rise to a claim under the FCA, it should affirm the District Court's ruling that there is no such claim under the FCA. Because the District Court correctly concluded that there can be no FCA liability for an alleged failure to mark, the District Court did not abuse its discretion when it found that allowing CFI leave to amend would be futile. But even if this Court were to disagree with the District Court's ultimate conclusion that marking duties do not constitute claims under the FCA, the District Court must nevertheless be affirmed for its proper determinations that CFI unduly delayed in seeking amendment and that amendment would be futile for failure to satisfy the pleading standards of Rule 9(b). *See supra*, Sections II.A and II.B.

## CONCLUSION

For the reasons stated above, Victaulic respectfully requests that this Court affirm the District Court's rulings (1) granting Victaulic's Motion to Dismiss and dismissing CFI's Complaint with prejudice and (2) denying CFI's Motion to Alter or Amend Judgment, and for Leave to File Amended Complaint.

Dated: October 9, 2015

Respectfully submitted,

/s/ Thomas C. Hill

Thomas C. Hill
Jeetander T. Dulani
Stephen S. Asay
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1200 Seventeenth Street NW
Washington, DC 20036
thomas.hill@pillsburylaw.com
jeetander.dulani@pillsburylaw.com
stephen.asay@pillsburylaw.com
Tel: (202) 663-8000

Brian R. Tipton
FLORIO, PERRUCCI,
STEINHARDT & FADER
235 Broubalow Way
Phillipsburg, NJ 08865
Tel: (908) 454-8300

*Counsel for Defendant – Appellee Victaulic Company*

## STATEMENT CONCERNING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a) and Third Circuit LAR 34.1(b), Victaulic respectfully requests oral argument in this case due to the complexity of the facts and issues presented.

**CERTIFICATE OF BAR MEMBERSHIP**

Pursuant to Third Circuit LAR 28.3(d), I certify that at least one of the attorneys whose names appear on this brief is a member of the bar of this Court, or has filed an application for admission pursuant to Third Circuit LAR 46.1.

Dated: October 9, 2015

/s/ Thomas C. Hill

Thomas C. Hill
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1200 Seventeenth Street NW
Washington, DC 20036
thomas.hill@pillsburylaw.com
Tel: (202) 663-8000

*Counsel for Defendant – Appellee Victaulic Company*

**CERTIFICATE OF COMPLIANCE PURSUANT TO FEDERAL RULE OF APPELLATE PROCEDURE 32(a)**

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 13,695 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

Dated: October 9, 2015

/s/ Thomas C. Hill
Thomas C. Hill
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1200 Seventeenth Street NW
Washington, DC 20036
thomas.hill@pillsburylaw.com
Tel: (202) 663-8000

*Counsel for Defendant – Appellee Victaulic Company*

**CERTIFICATE OF SERVICE**

I certify that on this 9th day of October, 2015, a copy of the foregoing Brief of Appellee was served upon all counsel of record via the Court's CM/ECF system.

Dated: October 9, 2015

/s/ Thomas C. Hill

Thomas C. Hill
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1200 Seventeenth Street NW
Washington, DC 20036
thomas.hill@pillsburylaw.com
Tel: (202) 663-8000
*Counsel for Defendant – Appellee Victaulic Company*

**CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS**

Pursuant to Third Circuit LAR 31.1(c), I certify that the text of the foregoing Brief of Appellee filed in electronic form is identical to the text in the paper copies.

Dated: October 9, 2015

/s/ Thomas C. Hill
Thomas C. Hill
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1200 Seventeenth Street NW
Washington, DC 20036
thomas.hill@pillsburylaw.com
Tel: (202) 663-8000

*Counsel for Defendant – Appellee*
*Victaulic Company*

**CERTIFICATE OF VIRUS CHECK**

Pursuant to Third Circuit LAR 31.1(c), I certify that a virus detection program, Webroot SecureAnywhere Endpoint Protection, Version 8.0.8.88, was run on the electronic file of this brief and that no virus was detected.

Dated: October 9, 2015

/s/ Thomas C. Hill

Thomas C. Hill
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1200 Seventeenth Street NW
Washington, DC 20036
thomas.hill@pillsburylaw.com
Tel: (202) 663-8000

*Counsel for Defendant – Appellee Victaulic Company*